```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
FELIX ENCINAS et al.,         )
                              )
        Plaintiffs,           )
                              )
        v.                    )    Civil Action No. 08-1156 (RWR)
                              )
J.J. DRYWALL CORP. et al.,    )
                              )
        Defendants.           )
_____)
```

## MEMORANDUM OPINION

Plaintiffs Felix Encinas, Gabriel Encinas, and Silvano Carbajal brought claims against defendants J.J. Drywall Corp. and Jose Luis Jimenez for unpaid overtime compensation, other unpaid wages, costs, and attorneys' fees on their own behalf and on behalf of all others similarly situated under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"); the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 et seq.; the District of Columbia Wage Payment and Wage Collection Law ("DCWPCL"), D.C. Code § 32-1301 et seq.; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann. Lab. & Empl. § 3-501 et seq.; and theories of unjust enrichment. Plaintiffs allege that the defendants have a policy of not paying drywall workers for overtime hours worked and of illegally deducting and retaining ten percent of its drywall employees' gross wages. Following entry of default judgments against the defendants, plaintiffs moved for an award of damages, fees and

costs to which the defendants did not respond. Because the plaintiffs have shown sufficiently their entitlement to relief, their unopposed motion will be granted.

BACKGROUND

J.J. Drywall Corp. failed to respond to the plaintiffs' complaint and default judgment was entered against it. The order of default judgment found J.J. Drywall Corp. liable for every count in the complaint and approved formulae for calculating wages owed. The plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23 and for conditional certification of the collective class under section 216(b) of the FLSA also was granted. Jimenez filed an answer to the complaint, but failed to appear at the initial scheduling conference. He also failed to respond to an order to show cause why sanctions should be not imposed, which warned him that failure to respond might result in an entry of default judgment against him. Jimenez failed to respond and default judgment was entered against him.

Plaintiffs stated in their motion for default judgment that the precise calculation of damages owed to all class members would not be possible until the number of members of the respective classes was established. At present, only plaintiffs Gabriel Encinas, Felix Encinas, and Silvano Carbajal, along with Miguel Linares, have opted in to the FLSA action. The defendants

failed to comply with the order that they post notices to inform potential class members of this litigation. (Pls.' Supp. Mem. in Support of Mot. for Order of Enlargement of Time Relating to Class Notice Issues.) J.J. Drywall Corp. was also ordered to submit to an audit and review of its payroll and other relevant records to determine the amount of wages paid and owed. Because the defendants have not maintained any employee records (Pls.' Mot. for Damages, Ex. 7, Jimenez deposition excerpts at 34-40), which violates section 211(c) of the FLSA, no audit was possible. Plaintiffs have submitted affidavits regarding their hours worked for defendants, overtime hours worked for defendants, unpaid wages owed, and unpaid overtime compensation owed, as well as affidavits regarding outstanding attorneys' fees.

## DISCUSSION

The employee bringing suit "has the burden of proving that he performed work for which he was not properly compensated." Arias v. U.S. Serv. Indus., Inc., 80 F.3d 509, 511 (D.C. Cir. 1996) (internal quotations omitted). However, "where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of just and reasonable inference*." Id. at 511-512 (emphasis in original). Here, the defendants have failed

to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 512. Thus, "the court may . . . award damages to the employee, even though the result be only approximate." Id. Plaintiffs' affidavits and supporting evidence establish the amount and extent of work as a matter of just and reasonable inference for each of the claims below.

I.  FLSA (FIRST CLAIM)

Plaintiffs' first claim seeks to recover under the FLSA unpaid overtime wages.[1]  Linares worked 8.5 hours of overtime for which he was paid at his hourly rate of $17 per hour rather than at a time-and-a-half rate.  (Pls.' Mot. for Class Certification, Decl. of Linares ("Linares Decl.") ¶¶ 8, 12-13, 19.)  Thus, defendants owe Linares $72.25[2] in overtime pay plus $72.25 in

---

[1] Although plaintiffs Gabriel Encinas, Felix Encinas, and Silvano Carbajal opted in to the action, they are not seeking damages for unpaid overtime compensation because the pay stubs do not adequately reflect the overtime work of Gabriel Encinas and Felix Encinas, and because Silvano Carbajal elected not to work overtime.  (Pls.' Corrected Mem. in Support of Pls.' Mot. for Award of Damages ("Pls.' Mem.") at 10 n.8.)

[2] There is a discrepancy between the unpaid overtime wages claimed by Linares and the actual wages owed.  Plaintiffs assert that Linares is entitled to $93.50 for 5.5 of the 8.5 hours of overtime detailed.  However, they also noted that Linares was paid for the overtime hours at regular or straight time, that is, at $17 per hour (excepting the unlawful 10% deduction discussed separately).  (Pls.' Mem. at 9.)  Linares is therefore entitled to $46.75 for those 5.5 hours, which represents the extra 50% of his hourly wage that he was promised beyond the regular wage that

liquidated damages to which he is entitled under the FLSA, 29 U.S.C. § 216(b), for a total of $144.50 in damages.[3]

## II.  DCMWA (SECOND CLAIM)

As does the FLSA, District of Columbia law makes an employer liable for unpaid overtime wages and an additional amount in liquidated damages. D.C. Code § 32-1012(a). Linares, then, is entitled under his second claim to the same $144.50 in damages as was calculated above, although he may not collect twice for the same unpaid overtime compensation.

## III. DCWPCL (THIRD CLAIM) AND UNJUST ENRICHMENT (FOURTH CLAIM)

The Washington, D.C. sub-class certified under Rule 23 was awarded judgment on the third claim for relief, that is, that the defendants unlawfully deducted 10% of gross wages from the wages of the members of the sub-class, in violation of the DCWPCL. This sub-class also was awarded judgment on the fourth claim for the unlawfully deducted wages under a theory of unjust

---

he stated he was paid for the applicable hours. Plaintiffs correctly calculated Linares' entitlement, $25.50, for the other 3 hours of overtime.  (Id.)

[3] Because the defendants failed to provide employee information to the plaintiffs and failed to post notices at job sites and other places where potential class members might see them, the period for potential class members to receive notice and consent to join the action will be extended until June 4, 2012. Within 90 days of the first additional class member timely opting in, plaintiffs' counsel shall file a memorandum proposing candidates for appointment and compensation (if appropriate) of a special master or claims administrator to determine additional claimants' eligibility for damages payments, and proposing procedures for making those determinations.

enrichment. The plaintiffs' affidavit evidence establishes the approximate number of employees and amount of work completed at the various job sites by the Washington, D.C. sub-class. Approximately 15 to 20 employees similarly situated to plaintiffs worked at the 505 9th Street, N.W. job site for a duration of at least 7 months. They were promised an average of $15 per hour and worked an average of 8 hours per day, five days per week. (Pls.' Mot. for Class Certification, Decl. of Gabriel Encinas ("Encinas Decl.") ¶ 18; Linares Decl. ¶ 11.) The amount owed, then, is between a minimum of $25,200 (15 employees multiplied by $15 per hour, multiplied by 8 hours per day, multiplied by 140 days, totaling $252,000, 10% of which is $25,200) and a maximum of $33,600 (20 employees multiplied by $15 per hour, multiplied by 8 hours per day, multiplied by 140 days, totaling $336,000, 10% of which is $33,600).[4] The average, which shall be awarded, is $29,400.

Approximately 20 employees similarly situated to the plaintiffs worked for defendants at the 1101 New York Avenue, N.W. job site. They worked for an average expected pay of $14

---

[4] There is a discrepancy between the unpaid wages that plaintiffs claim for the Washington, D.C. sub-class and the actual unpaid wages owed. Plaintiffs asserted that the members of the sub-class worked five days per week for a period of at least 7 months, but they then calculated the proposed award assuming a period of 210 days. (Pls.' Mem. at 13.) With a five-day work week, the appropriate number of days is 140 for a seven-month period.

per hour for an average of approximately 8 hours per day for approximately 6 days.  (Encinas Decl. ¶¶ 9, 13, 15.)  Therefore, the amount owed which shall be awarded is $1,344 (20 employees multiplied by $14 per hour, multiplied by 8 hours per day, multiplied by 6 days, totaling $13,440, 10% of which is $1,344).[5]

Approximately 12 to 15 employees similarly situated to plaintiffs worked at the job site located at 5th and K Streets, N.W., Washington, D.C.  The members of the sub-class worked for a duration of approximately 2 to 3 months for 8 hours a day, 5 days per week, for an estimated average pay of $15 per hour.  (Linares Decl. ¶¶ 17, 18.)  Accordingly, the members of the sub-class are owed between a minimum of $5,760 (12 employees multiplied by $15 per hour, multiplied by 8 hours a day, multiplied by 40 days, totaling $57,600, 10% of which is $5,760) and up to at least $10,800 (15 employees multiplied by $15 per hour, multiplied by 8 hours per day, multiplied by 60 days, totaling $108,000, 10% of which is $10,800).[6]  The average to be awarded is $8,280.

---

[5] The plaintiffs' proposed math incorrectly calculated the amount owed as $168.  (Pls.' Mem. at 14.)

[6] There is a discrepancy between the unpaid wages that plaintiffs claim for the Washington, D.C. sub-class and the actual unpaid wages owed.  Plaintiffs asserted that the members of the sub-class worked five days per week for a period of approximately 2 to 3 months, but they then calculated the proposed minimum and maximum award assuming periods of 60 and 90 days, respectively.  (Pls.' Mem. at 14.)  With a five-day work week, the appropriate minimum and maximum number of days for a 2 to 3 month period is 40 and 60, respectively.

The members of the Washington, D.C. subclass thus are owed $39,024 total in unlawful wage deductions for the three sites.

IV. MWPCL (FIFTH CLAIM) AND UNJUST ENRICHMENT (SIXTH CLAIM)

The Maryland Sub-Class certified under Rule 23 was awarded judgment on the fifth claim for relief, that is, that the defendants unlawfully deducted 10% of gross wages from the wages of the members of the sub-class, in violation of the MWPCL. This sub-class was also awarded judgment on the sixth claim for the unlawfully deducted wages under a theory of unjust enrichment. The plaintiffs' affidavit evidence establishes the approximate number of employees and amount of work completed at a job site for the Maryland sub-class. Approximately 15 employees similarly situated to the plaintiffs worked for defendants at 2200 Research Boulevard in Maryland for a duration of 1 to 2 months, at least approximately 8 hours a day, 5 days per week, for approximately $17 per hour. (Linares Decl. ¶¶ 13, 16.) Thus, the members of the subclass are owed between a minimum of $4,080 (15 employees multiplied by $17 per hour, multiplied by 8 hours a day, multiplied by 20 days, totaling $40,800, 10% of which is $4,080) and up to at least $10,800 (15 employees multiplied by $17 per hour, multiplied by 8 hours per day, multiplied by 40 days,

totaling $81,600, 10% of which is $8,160).[7]  The average, which shall be awarded, is $6,120.  In addition, under the Maryland Wage Payment and Collection Law, the members of the subclass are entitled to three times the unlawfully withheld wages, totaling $18,360, in liquidated damages.  Md. Code Ann. Lab. & Empl. § 3-507.2(b).

V.  ATTORNEYS' FEES

The FLSA, DCMWA, DCWPCL, and MWPCL authorize awarding attorneys' fees to employees whose rights are violated under those respective statutes.  29 U.S.C. § 216(b); D.C. Code §§ 32-1012(c), 32-1308(b); Md. Code Ann. Lab. & Empl. § 3-507.2(b).  "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  Blum v. Stenson, 465 U.S. 886, 888 (1984).  "An attorney's regular billing rate is presumptively reasonable as long as it 'reflect[s], among other things, the level of skill necessary to

---

[7] There is a discrepancy between the unpaid wages that plaintiffs claim for the Maryland sub-class and the actual unpaid wages owed.  Plaintiffs asserted that the members of the sub-class worked five days per week for a period of approximately 1 to 2 months, but they then calculated the proposed minimum and maximum award assuming periods of 30 and 60 days, respectively.  They also state an approximate number of employees of 15, but then calculate the minimum award based on 15 employees and the maximum based on 20 employees. (Pls.' Mem. at 16.)  With a five-day work week, the appropriate minimum and maximum number of days for a 1 to 2 month period is 20 and 40, respectively.  In addition, the approximate number of employees, 15, is being used as the base for calculating both the minimum and maximum award.

conduct the case and the attorney's reputation." Pleitez v. Carney, 594 F. Supp. 2d 47, 53 (D.D.C. 2009) (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1326 (D.C. Cir. 1982) (alterations in original).

Plaintiffs' counsel at the law firms of DeCarlo, Connor & Shanley and O'Donoghue & O'Donoghue have filed declarations with attached exhibits setting forth the normal billings rates, experience, and qualifications of the lawyers involved in this litigation. Both declarations state that the firms have reviewed the time records for work on this litigation and have removed entries found excessive, redundant, or otherwise unnecessary. The declaration of Catherine R. Fayette, an associate at O'Donoghue & O'Donoghue, provides support for a reasonable fee award of $44,297.75. The declaration of Brian F. Quinn, a member at DeCarlo, Connor & Shanley, provides support for a reasonable fee award of $4,367.51. These fees encompass an amount of $11,372.76 incurred in the action against J.J. Drywall after the fees awarded to the plaintiffs in the Order [Docket #44] entered on August 25, 2010, and an amount of $37,292.50 incurred in the action against Jimenez from the beginning of the action through January 2011. In addition, the plaintiffs provide support for

$1,446.55 in costs. (Fayette Decl., Ex. 3.) Thus, the award will total $48,665.26 in fees and $1,446.55 in costs.[8]

## CONCLUSION

Plaintiffs have substantiated their request for an award of damages, costs and fees. Their motion will be granted. A separate order accompanies this memorandum opinion.

SIGNED this 3rd day of January, 2012.

```
                                  /s/
                        RICHARD W. ROBERTS
                        United States District Judge
```

---

[8] Defendant Jose Luis Jimenez remains liable to the plaintiffs for an amount of $336.00 in court-ordered sanctions for failure to appear at the mandatory initial scheduling conference and an amount of $591.25 in court-ordered sanctions for failure to appear at the mandatory post-discovery scheduling conference held. (Orders, Docket ##43, 49.)